**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| CINDY R. MCGREW, | : | |
| Plaintiff, | : | |
| | | Case No. 3:07CV0285 |
| vs. | : | |
| | | District Judge Walter H. Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

**I.     INTRODUCTION**

Plaintiff Cindy R. McGrew fell and injured her back, right hand, and right wrist while at work in February 2005.  (Doc. # 9 at 5; *see* Tr. 457).  Although medical imaging revealed no significant findings (Tr. 132-33), she has since continued to suffer from chronic pain in her lower back that radiates into her left hip and thigh.  She also suffers from a number of other health problems "including cervical degenerative disc disease requiring surgical intervention, chronic fatigue, peripheral neuropathy, fibromyalgia syndrome, tremors, Barrett's esophagus, a history of Epstein-Barr virus since 1994, and depression."  (Doc. #9 at 5).

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

1

In May 2003 Plaintiff sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits (DIB). (Tr. 55-57). She claimed a disability onset date of February 5, 2002. *Id*.

After initial administrative denials of her DIB application, Administrative Law Judge (ALJ) James I.K. Knapp held a hearing, during which Plaintiff testified. (Tr. 456-78). ALJ Knapp issued a written decision concluding that Plaintiff was not under a "disability" within the meaning of the Social Security Act. (Tr. 14-29). The ALJ's non-disability determination and resulting denial of Plaintiff's DIB application became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Specific Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), the administrative record, and the record as a whole.

Plaintiff seeks a reversal of the ALJ's decision and a remand to the Social Security Administration for payment of DIB. The Commissioner seeks an Order affirming the ALJ's decision.

## II.   FACTUAL BACKGROUND

### A.   <u>Plaintiff and Her Testimony</u>

Plaintiff's age on the date her claimed disability began placed her in the category of a "younger person" within the meaning of the Commissioner's Regulations. *See* 20

C.F.R. §404.1563. Since July 2003, her age places her in the category of a "person closely approaching advanced age" for purposes of resolving her DIB application. *See* 20 C.F.R. §1563(d); *see also* Doc. #5 at 5. She has a high school education (Tr. 27) and has worked over the years as a general clerk. (Doc. #9 at 5; *see* Tr. 114).

Plaintiff met the insured-status requirements for purposes of DIB eligibility on February 5, 2002 (her claimed disability onset date) through March 13, 2006 (the date of the ALJ's Decision). *See* Tr. 28. Her DIB application therefore presented the Social Security Administration with the issue of whether she was under a disability from February 5, 2002 through March 13, 2006.

Plaintiff testified during the ALJ's hearing that she has constant low back pain extending into her left hip and down the middle of her left thigh. (Tr. 458-59). She has neck and shoulder pain due to a disc compressed against her spine. (Tr. 460). Neck surgery did not relieve her pain. *Id*. Plaintiff's Medical records document that she underwent a C6-7 anterior cervical discetomy and fusion on August 24, 2005. (Tr. 412-422). After a follow-up visit in November 2005, Plaintiff's surgeon wrote a letter to her treating physician Dr. Goldstick, explaining:

> She is generally doing well, but does report some mechanical type neck pain with radiation to her shoulders bilaterally, which appears to be musculoskeletal in nature. She also notes one or two episodes of tingling in her hands, which is not present today. I feel she would benefit from some physical therapy.... I reviewed her new cervical spine x-rays and these show the bone graft and hardware to be in excellent position.

(Tr. 412).

Plaintiff further testified that she has additional pain "[e]verywhere," notably in her joints, *id.*, and she get tremors in her hands and experiences "like pins and needles ... sharpness in [her] hands and feet." (Tr. 461). Her hand tremors are constant. (Tr. 462). She has peripheral neuropathy in her hand, arms, legs, and feet; she suffers from acid reflux due to Barrett's disease in her esophagus; and she suffers from depression. (Tr. 462-63). When Plaintiff is depressed, she cries a lot and has suicidal thoughts but "it's just thoughts." (Tr. 463). At the time of the ALJ's hearing, she was not under the care of a psychiatrist or psychologist. (Tr. 464).

Plaintiff's typical daily activities include watching television, cooking (making sandwiches or microwavable food or cereal), washing the dishes (only a plate a glass, since she lives alone), vacuuming her "very small one bedroom apartment," and doing laundry. (Tr. 464, 467). She goes shopping once every two weeks. *Id.* She does not attend church, does not visit friends or relatives, no longer has hobbies, and does not go the movies. (Tr. 465). She sleeps 2-to-4 hours during the day and 10 hours each night. (Tr. 465-66, 471).

Plaintiff testified that she can walk for 10 minutes at a time, stand for 10 minutes at a time, and sit for 10 minutes before needing to stand and move around. (Tr. 466). She can lift up to 5 pounds. *Id.* She is tired all the time due to Epstein-Barr virus, which she has had since the early 1990s. (Tr. 468).

    **B.**    **Medical Source Opinions**

Plaintiff relies on the opinions of Dr. Goldstick, who examined Plaintiff a number of times between July 2003 and September 2004. (Tr. 227-37).

In December 2005 Dr. Goldstick wrote a letter (Tr, 446-48) to another physician indicating that he had seen Plaintiff in a follow-up after her neck surgery. (Tr. 446-48). Dr. Goldstick wrote, "I feel that the patient is disabled relating to her multiple medical problems." (Tr. 448). His diagnostic impressions of Plaintiff were "fibromyalgia, fibrositis, and chronic fatigue syndrome. She is status post myelopathy from cervical stenosis and neuropathy related to her gammopathy on hematological evaluation...." (Tr. 448).

Dr. Goldstick also completed a one-page form in December 2005 by circling numbers and checking boxes, without providing a supporting explanation. (Tr. 438). Dr. Goldstick indicated his opinions that at any single time during an 8-hour workday, Plaintiff could sit for 2 hours, stand for 1 hour, walk for 1 hour. (Tr. 438). Dr. Goldstick also believed that during an 8-hour workday, Plaintiff could sit for a total of 3 hours, stand for a total of 1 hour, and walk for a total of 1 hour. *Id.* According to Dr. Goldstick, Plaintiff could lift 5 pounds frequently and 10 pounds occasionally; she could never lift more weight than that; she could occasionally carry 5 pounds but never more than that; she could not push or pull arm controls with either hand; and she could not squat, crawl, or climb. *Id.*

The Commissioner relies on the opinions of Dr. Cho, who evaluated the evidence of record in October 2003 and completed a form at the request of the Ohio Bureau of

Disability Determinations (Ohio BDD). (Tr. 155-59). Dr. Cho checked boxes indicating his opinions, which he also supported with some explanation, that Plaintiff perform light exertional work.[2] (Tr. 156-57). Specifically, Dr. Cho though Plaintiff could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; she could stand and/or walk 6 hours in an 8-hour workday; she could sit with normal breaks for 6 hours in an 8-hour workday; and had no limitation on her ability to push and/or pull, under the above weight restrictions. (Tr. 156).

The Commissioner also relies on the opinions of Dr. Starkey, who reviewed the record and completed a form in November 2003. (Tr. 182-87). Dr. Starkey checked boxes and provided some explanation of his opinions that Plaintiff could perform medium exertional work[3] with only occasional climbing of ladders, ropes, and scaffolds; and she must avoid concentrated exposure to machinery and heights. (Tr. 182-87).

The Commissioner further relies on Dr. Congbalay, who, in May 2005, stamped her agreement with Dr. Starkey's opinions. (Tr. 187).

### III. ADMINISTRATIVE REVIEW

#### A. "Disability" Defined And The ALJ's Sequential Evaluation

The term "disability" as defined by the Social Security Act carries a

---

[2] Under the Regulations, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

[3] Under the Regulations, "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...." 20 C.F.R. §404.1567(c).

specialized meaning of limited scope. Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies.[4] *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 14-28; *see also* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

---

[4] Impairments must also be either expected to cause death or last twelve months or longer. *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

### B. The ALJ's Decision

At Step 2 of the sequential evaluation, the ALJ concluded that Plaintiff has five severe impairments: "(1) peripheral neuropathy of unknown etiology; (2) recurrent mild tremors; (3) dysthymia; (4) a pain disorder due to physical and psychological factors; and, (5) since approximately January 1, 2005, cervical degenerative disc disease." (Tr. 28).

The ALJ found at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria of a listing-level impairment. (Tr. 28).

At Step 4 the ALJ found that Plaintiff had the Residual Functional Capacity to perform a limited range of medium work from February 2002 to January 2005, and a limited range of light work after January 2005. The ALJ specifically found:

> From the alleged disability onset date of February 5, 2002, until January 2005, I find that the claimant lacked the residual functional capacity to: (1) lift more than 25 pounds frequently or 50 pounds occasionally; (2) climb ladders or scaffolds; (3) do any job requiring the constant use of her hands in an outstretched position; (4) work at unprotected heights or around moving machinery; (5) have more than occasional contact with supervisors, coworkers, or members of the public; (6) do other than low stress work activity (i.e., no job involving above average pressure for production, work that is other than routine in nature, or work that is hazardous). Since January 2005 to the date of this decision, the claimant further lacks the residual functional capacity to: (1) lift more than 10 pounds frequently or 20 pounds occasionally; or (2) do any reaching above shoulder level....

(Tr. 28). Using this assessment, the ALJ found that Plaintiff could not perform her past relevant work as a general clerk. (Tr. 28). And the ALJ's finding throughout his sequential evaluation led him to conclude that Plaintiff was not under a disability and hence not eligible for DIB. (Tr. 28-29).

## IV. JUDICIAL REVIEW

Judicial review determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review for substantial evidence is deferential, not *de novo*. *See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). An ALJ's factual findings must be upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90). Once substantial supporting evidence is found in the administrative record, courts do not consider whether they agree or disagree with the ALJ's findings or whether the administrative record contains contrary evidence. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Still, substantial evidence is not the analytical ending point. Judicial review further considers whether the ALJ "applied the correct legal criteria." *Bowen*, 478 F.3d at 746. If the ALJ does not, the decision may not be upheld even if the findings are

9

supported by substantial evidence. *See id.* For example, a decision will not be upheld where the ALJ failed to apply mandatory procedural rules and legal criteria established by the Commissioner's Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein).

## V.     DISCUSSION

Plaintiff asserts four main errors:

I.   The ALJ's finding that she is capable of medium and light exertional work, as defined by 20 C.F.R. §404.1567, is not supported by substantial evidence.

II.  The ALJ relied on an outdated Residual Functional Capacity report instead of relying on the more recent opinions of Dr. Goldstick.

III. The ALJ failed to make an adequate credibility determination in accordance with Social Security Ruling 96-7p.

IV.  The ALJ did not properly evaluate Plaintiff's chronic fatigue/Epstein-Barr syndrome.

Beginning with the ALJ's assessment of Plaintiff's Residual Functional Capacity, the ALJ declined to credit Dr. Goldstick's December 2005 opinions, instead relying on the opinions of Drs. Starkey and Congbalay. In doing so, the ALJ carefully reviewed Plaintiff's medical records and the opinions of these (and other medical sources) physicians as required by the Regulations.

The ALJ first correctly described the legal criteria mandated by the Regulations. He set forth the elements necessary to trigger the treating physician rule and he

recognized the need to continue weighing a treating physician's opinions when the treating physician rule does not apply. Tr. 23; *see Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). The ALJ also correctly listed the regulatory factors applicable when continuing to weigh a treating physician's opinions – including, in part, supportability, consistency, and specialization. *See* Tr. 23; *see also Wilson*, 378 F.3d at 544. When rejecting Dr. Goldstick's opinions, the ALJ applied this legal criteria and provided reasons for rejecting this physician's December 2005 opinions. *See* Tr. 24. And a review of Dr. Goldstick's December 2005 opinions reveals that it does not contain a supporting explanation or a reference to supporting medical evidence. *See* Tr. 438. It was therefore not error for the ALJ to reject Dr. Goldstick's opinions. *See Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 278 (6th Cir. 1994).

The ALJ also did not err by relying in part on the opinions of Dr. Starkey, because Dr. Starkey had access to a more complete record than Dr. Cho, and because Dr. Congbalay confirmed Dr. Starkey's assessment of Plaintiff's Residual Functional Capacity. *See* Tr. 21-22; *see also* Tr. 182-87. Dr. Starkey, moreover, provided a supporting explanation, *see* Tr. 1883-84, whereas Dr. Goldstick provided none in the form he completed. *See* Tr. 438. It was therefore within the ALJ's discretion to place more weight on Dr. Starkey's opinions than Dr. Goldstick's opinions. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876-77 (6th Cir. 2007); *see Barker v. Shalala*, 40 F.3d 789, 794-75 (6th Cir. 1994); *Cutlip*, 25 F.2d at 287; Soc. Sec. Ruling 96-

6p (state agency medical reviewers are highly qualified physicians who are experts in medical issues related to disability claims).

Plaintiff's challenges to the ALJ's credibility assessment also lacks merit. "[A]n ALJ's is not required to accept a clamant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability.' Notably, an ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.' However, they must also be supported by substantial evidence." *Cruse*, 502 F.3d at 542 (quoting in part *Jones v. Comm'r, of Soc. Sec*., 336 F.3d 469, 475 (6th Cir. 2003)).

The ALJ correctly identified the legal criteria applicable under the Regulations to resolve whether a claimant has provided credible testimony. *See* Tr. 15-16; *see also* 20 C.F.R. §404.1529; *Walters v. Commissioner of Social Sec*., 127 F.3d 525, 531 (6th Cir. 1997). The ALJ applied this legal criteria when assessing Plaintiff's credibility considering the medical evidence, her medical history, the absence of negative side effects from medications, the ALJ's own observations of her during the hearing, and her daily activities. *See* Tr. 25-26. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.... An ALJ may also consider household and social activities engaged in by the claimant in evaluating a clamant's assertions of pain or ailments." *Walters*, 127 F.3d at 531. Substantial evidence supports the ALJ's adverse credibility findings in light of the degree and variety of activities she can do, the lack of negative side effects from

medications, the minimal medical findings after her surgery and in support of Dr. Goldstick's opinions, *see* Tr. 412, 438, and her ability to live independently, *cf. Walters*, 127 F.3d at 532 (ALJ's credibility finding affirmed where the claimant "admits being able to run all of his errands, walk two miles, prepare all of his meals, and drive three times a week."). Plaintiff's contention that the ALJ erred by not considering her chronic fatigue/Epstein-Barr Syndrome lacks merit. The ALJ discussed the testing Plaintiff underwent for Epstein-Barr virus and he also found that she did not meet the criteria for disabling chronic fatigue syndrome. *See* Tr. 17-19. Although the ALJ did not specifically incorporate this into his discussion of Plaintiff's credibility, this was not error because he plainly considered these diagnoses and related evidence, and because substantial evidence supported the ALJ's credibility findings.

   Turning next to Plaintiff's challenges to the ALJ's assessment of her Residual Functional Capacity, in the absence of legal error and given the presence of substantial supporting evidence discussed above, the ALJ's assessment of Plaintiff's Residual Functional Capacity accurately reflects her work abilities and limitations. *See Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). Although Plaintiff contends that the limitations set by the ALJ concerning her ability to perform light work after January 2005 effectively reduced her to sedentary work, the ALJ's lifting restrictions are consistent with the conclusion that she could perform light work (with certain limitations) after January 2005. *See* Tr. 28; *see also* 20 C.F.R. §404.1567(b). And, the ALJ also did not impose any limitation on Plaintiff's ability to stand or walk, *see*

Tr. 28, consistent with the ability to perform light work. *See* 20 C.F.R. §404.1567(b) ("Even though the weight lifted [for light work] may be very little, a job is in this category when it requires a good deal of walking or standing....").

Plaintiff lastly contends that the ALJ erred in using the Grid Rules as a framework for his decision because adding restrictions to her ability to perform light and medium work "defeats the purpose of classifying jobs" at the various exertional levels. (Doc. #9 at 9). This contention lacks merit. The Commissioner correctly asserts that the Regulations contemplate that the Grid Rules do not cover all possible variations of vocational factors by specifically instructing that the Grid Rules provide a framework for decision when an individual has various combinations exertional abilities and limitations. *See* Medical-Vocational Guidelines, 20 C.F.R. Subpart P, Appendix 2, §200.00(d) ("These rules represent various combinations of exertional capabilities, age, education and work experience and also provide an overall structure for evaluation of those cases in which the judgments as to each factor do not coincide with those of any specific rule.").

Accordingly, Plaintiff's Statement of Specific Errors lacks merit.

**IT IS THEREFORE RECOMMENDED THAT:**

1.      The Commissioner's non-disability determination be affirmed; and

2.      The case be terminated on the docket of this Court.


August 7, 2008                                         s/ Sharon L. Ovington
                                                       Sharon L. Ovington
                                                       United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).